# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-0048

JUDITH A. KANE, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      May 28, 2003 )

*Michael P. Horan*, of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Lavinia A. Derr*, all of Washington, D.C., were on the brief for the appellee.

Before FARLEY, IVERS, and STEINBERG, *Judges*.

FARLEY, *Judge*, filed the opinion of the Court. STEINBERG, *Judge*, filed a concurring opinion.

FARLEY, *Judge*:  On appeal to this Court is a September 26, 2001, decision of the Board of Veterans' Appeals (BVA or Board) that, inter alia, denied for lack of legal merit the appellant's claims for (1) service connection for the cause of the veteran's death, and (2) an increase in dependency and indemnity compensation (DIC) benefits based on the need for regular aid and attendance or housebound status. The appellant and the Secretary filed briefs.  The appellant filed a citation of supplemental authority on May 9, 2003.  This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a).  For the reasons that follow, the Court will affirm the Board decision.

## I. BACKGROUND

The appellant is the widow of veteran John E. Kane.  The veteran served on active duty in the U.S. Navy from March 1951 to February 1955.  Record (R.) at 21.  During service, the veteran

began smoking cigarettes. R. at 190-91, 195. He was diagnosed with arteriosclerotic cardiovascular disease in May 1973. R. at 57-59. In medical statements dated December 1997 and January 1998, Dr. Jocson and Dr. Bash both acknowledged that the veteran's nicotine dependence, which began in service, was a major factor contributing to his heart condition. R. at 190-91, 195. In an October 1998 decision, the VA regional office (RO), inter alia, awarded the veteran service connection for (1) nicotine dependence, (2) coronary artery disease, status post bypass surgery, with a history of congestive heart failure and angina secondary to nicotine dependence, and (3) chronic bronchitis secondary to nicotine dependence. R. at 221-27. The veteran died in November 1999 as a result of heart failure and ischemic cardiomyopathy, with end-stage renal failure as a contributing factor. R. at 253. The appellant requested DIC at the housebound rate later that month. R. at 246, 248-51.

In March 2000, the RO denied, inter alia, the appellant's claim for service connection for the veteran's cause of death. R. at 255-58. The RO stated the following:

> Although the veteran passed away from heart failure and he was service connected for heart disease, service connection for cause of death may not be established since his heart disease was related to tobacco use. VBA Letter 20-98-24, dated 9-24-98 states, "If a surviving spouse files a claim June 10, 1998[,] or later, entitlement to DIC may not be established on the basis that death resulted from disease or injury attributable to the use of tobacco products during service, even though the claim was filed within one year of the veteran's death. The date of receipt of the claim for DIC is controlling, not the date of the veteran's death."

R. at 256. The appellant, through counsel, appealed the RO decision to the Board. R. at 263, 300.

In the September 2001 decision here on appeal, the Board, inter alia, determined that the appellant's claims for service connection for the veteran's cause of death and for DIC were without legal merit. The Board noted that the veteran's medical records do not show a diagnosis of heart disease until 1973 and it has never been linked to the veteran's period of military service, other than through his use of tobacco products during service. In its decision, the Board provided the following explanation:

> The Board acknowledges the appellant's contention that as service connection was already in effect for heart disease, the veteran's death should be service-connected. Nevertheless, the Board notes that service connection for the veteran's heart disease was

granted secondary to his nicotine dependence developed during service. The law is clear that, for claims filed after June 9, 1998, "a veteran's death shall not be considered to have resulted from [an incident of service] on the basis that it resulted from injury or disease attributable to the use of tobacco products by the veteran during the veteran's active service." 38 U.S.C.[] §1103(a).

R. at 10-11. The Board also cited to the corresponding regulation, 38 C.F.R. § 3.300 (2001) (66 Fed. Reg. 18,195 (2001)). R. at 11-12. The Board stated that the appellant's claim for DIC was filed in November 1999, after the June 9, 1998, effective date of 38 U.S.C. § 1103 and 38 C.F.R. § 3.300 and concluded that "Congress has enacted a clear prohibition against granting service connection for death due to the use of tobacco products in service, [and therefore] there is no legal basis for the benefits sought on appeal." R. at 10.

On appeal, the appellant argues that the Board incorrectly construed the meaning of the word "attributable" in 38 U.S.C. § 1103 when it promulgated 38 C.F.R. § 3.300. She maintains that because the veteran was awarded service connection for his cardiovascular problems, it had already been "attributed" to the use of tobacco, and therefore the veteran's ailments could no longer be considered "attributable" to the use of tobacco. She further argues that if Congress had intended 38 U.S.C. § 1103 to be applicable to tobacco-related disabilities found to be service connected before the effective date of 38 U.S.C. § 1103, it would have used the word "attributed."

With regard to the Board's denial of her DIC claim, the appellant asserts that the Board's interpretation of 38 U.S.C. § 1103 is inconsistent with 38 U.S.C. § 1310(a) because section 1310(a) mandates that the Secretary "shall" pay DIC to the veteran's spouse when the veteran dies of a service-connected disability. *See* 38 U.S.C. § 1310(a). She further maintains that the Board also erred by relying on 38 C.F.R. § 3.300 as a basis for the denial of DIC benefits. More specifically, the appellant asserts that (1) VA gave the regulation an impermissible retroactive effect by assigning an effective date of June 10, 1998, as the effective date of the regulation, (2) VA violated 5 U.S.C. § 553 by assigning an effective date earlier than 30 days after the regulation was published in the Federal Register, and (3) this Court's ruling in *Karnas v. Derwinski,* 1 Vet.App. 308 (1991), precluded the Board from using this regulation against the appellant.

## II. ANALYSIS

### A.

When a veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310. A veteran's death is due to a service-connected disability when "such disability was either the principal or a contributory cause of death." See 38 C.F.R. § 3.312 (2002). A claim for DIC is generally treated as a new claim, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran before his death. *See* 38 C.F.R. § 20.1106 (2002); *see also Owings v. Brown*, 8 Vet. App. 17, 19 (1995); *Zevalkink v. Brown*, 6 Vet. App. 483, 491 (1994). Section 1310(a) of title 38, U.S. Code, reads as follows:

> When any veteran dies after December 31, 1956, from a service-connected or compensable disability, the Secretary shall pay [DIC] to such veteran's surviving spouse, children, and parents. The standards and criteria for determining whether or not a disability is service-connected shall be those applicable under chapter 11 of this title.

Section 1103(a) of title 38, U.S. Code, provides:

> Notwithstanding any other provision of law, a veteran's disability or death shall not be considered to have resulted from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service for purposes of this title on the basis that it resulted from injury or disease attributable to the use of tobacco products by the veteran during the veteran's service.

Section 3.300 of title 38, Code of Federal Regulations, provides:

> (a) For claims received by VA after June 9, 1998, a disability or death will not be considered service-connected on the basis that it resulted from injury or disease attributable to the veteran's use of tobacco products during service. For the purpose of this section, the term "tobacco products" means cigars, cigarettes, smokeless tobacco, pipe tobacco, and roll-your-own tobacco.
>
> . . . .
>
> (c) For claims for secondary service connection received by VA after June 9, 1998, a disability that is proximately due to or the result of an injury or disease previously service-connected on the basis that it is attributable to the veteran's use of tobacco products during service will not be service-connected under §3.310(a)(general provision related to secondary service connection claims).

4

The Court interprets a statute de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). The starting point in interpreting a statute is an examination of the language and structure of the statute itself, for "if the intent of Congress is clear, that is the end of the matter." *Cacatian v. West*, 12 Vet.App. 373, 376 (1999) (citing *Gardner v. Brown*, 5 F.3d at 1456); *see also Meeks v. West*, 12 Vet.App. 352, 354 (1999) ("Principles of statutory construction require that, where a statute has a plain meaning, a Court shall give effect to that meaning. . . . [E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." (citations omitted) (quoting *Gardner v. Derwinski*, 1 Vet. App. 584, 587-88 (1991)). However, if "it is clear that . . . the literal import of the text . . . is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results," the Court will not reach that result. Norman J. Singer, Sutherland on Statutory Construction § 46.07 (5th ed. 1992); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994); *United States v. Brown*, 333 U.S. 18, 25-26 (1948); *Timex V.I., Inc., v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Faust v. West*, 13 Vet.App. 342, 350 (2000); *cf. Davenport v. Brown*, 7 Vet.App. 476, 483-84 (1995) (finding no "absurd result" in interpretation of other chapter 31 provision). Further, in *Chevron v. Natural Res. Def. Council*, 467 U.S. 837 (1984), the U.S. Supreme Court provided the following guidance to reviewing courts:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. . . . [H]owever, . . . if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id*. at 842-43 (footnotes omitted).

B.

Although the appellant argues that the use of the word "attributable" instead of "attributed" makes 38 U.S.C. § 1103 inapplicable to her claim for service connection for the veteran's death, the plain language of the statute makes the intent of Congress clear. The word "attributable" is

5

necessarily broader than "attributed" because "attributable" includes things already attributed as well as those which may be attributed. Indeed, according to Webster's Third New International Dictionary, attributable is defined as "capable of being attributed." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 1966). Thus, the plain language of 38 U.S.C. § 1103 expresses the Congressional intent to no longer award service connection for a veteran's death that results from a service connected disease that was "capable of being attributed" to the use of tobacco products during the veteran's service.

To the extent that there may be any ambiguity in the interpretation of 38 U.S.C. § 1103, VA has clearly addressed the issue of the definition of the word "attributed" in the regulatory history of 38 C.F.R. § 3.300:

> One commenter stated that the proposed regulation does not make clear whether a claim for [DIC] filed on or after June 9, 1998, based on a veteran's disability which was determined, prior to June 9, 1998, to be service-connected based upon the veteran's use of tobacco products during service is barred by 38 U.S.C. [§] 1103(a). The commenter pointed out that 38 U.S.C. [§] 1103(a) refers to injury or disease which is "attributable," rather than "attributed" to use of tobacco products. The commenter contends that, if a veteran's service connection claim was granted prior to June 9, 1998, the veteran's disability was "attributed" to use of tobacco products. The commenter stated that, if the veteran dies from the disability which was service connected prior to June 9, 1998, a post-June 9, 1998, DIC claim would not be based on a disease or disability not yet "attributed to" tobacco use but "attributable to" tobacco use. Rather, according to the commenter, such a DIC claim would be based on a service-connected disability. This commenter recommended that if VA considers there to be any ambiguity in 38 U.S.C. [§] 1103 on this point, VA should resolve this ambiguity in the veteran's favor.
>
> . . . .
>
> With regard to the commenter's reliance on use of the word "attributable" rather than "attributed" in 38 U.S.C. [§] 1103(a) and proposed 38 [C.F.R. §] 3.300(a), the word "attributable" is defined by Webster's Third New International Dictionary of the English Language 141 (1981), to mean "capable of being attributed." Thus, under section 1103(a), if a veteran's service-connected disability or death is capable of being attributed to the use of tobacco products, service connection [for DIC purposes] is precluded. A veteran's disability which was "attributed" to use of tobacco products during

6

service prior to June 9, 1998, would necessarily be "capable of being attributed" to use of tobacco products. Therefore, use of the word "attributable" does not support the commenter's conclusion that a DIC claim filed after June 9, 1998, based upon a veteran's disability which was attributed to tobacco use during his or her lifetime is not precluded by section 1103(a).

66 Fed. Reg. at 18,196. The above commentary and the Secretary's resulting regulation constitute a permissible construction of 38 U.S.C. § 1103 and VA's statutory interpretation as reflected in the regulation is entitled to deference. *See Chevron*, 467 U.S. at 842-43; 38 C.F.R. § 3.300 (66 Fed. Reg. 18,195)*.* Accordingly, the Court finds the appellant's argument to be without merit.

The appellant also argues that the Board's interpretation of 38 U.S.C. § 1103 is inconsistent with 38 U.S.C. 1310(a), in that the word "shall" in section 1310(a) mandates an award of DIC to a veteran's spouse when the veteran dies of a service-connected disability. *See* 38 U.S.C. § 1310(a). The appellant contends that 38 U.S.C. § 1103 must be interpreted based upon the entire statutory scheme of title 38 and that nothing in 38 U.S.C. § 1103 overrides the mandate of 38 U.S.C. § 1310(a). However, when reading the statute as a whole, as the appellant correctly advises we must, the Court is compelled to conclude that the second sentence of 38 U.S.C. 1310(a) not only authorizes, but mandates the Secretary's interpretation. *Id.* Section 1310(a), title 38, U.S. Code, specifically provides that determinations as to whether a disability is service connected for purposes of DIC shall be based on chapter 11 of title 38. 38 U.S.C. § 1310(a). As noted above, 38 U.S.C. § 1103, found in chapter 11 of title 38, plainly states that service connection cannot be awarded for a veteran's death attributable to the use of tobacco products during service for claims filed after June 9, 1998. Moreover, section 1103 begins with the nullifying clause, "[n]otwithstanding any other provision of law." Because DIC is a new claim, regardless of the outcome of previous RO decisions regarding service connection, and because the appellant's November 1999 claim was filed after the effective date of 38 U.S.C. § 1103, the appellant is precluded from receiving DIC benefits in this case. *See Owings* and *Zevalkink*, both *supra*.

## C.

In *Bowen v. Georgetown Univ. Hosp.*, 288 U.S. 204, 208 (1988), the U.S. Supreme Court stated that "a statutory grant of legislative rulemaking authority will not, as a general matter, be

understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.*" See also Landgraf v. USI Film Prods.*, 511 U.S. 244, 272-73 (1994). This Court stated in *Karnas* that "where the law or regulation changes after a claim has been filed . . . but before the administrative or judicial appeal process has been concluded, the version mo[re] favorable to [the] appellant should . . . apply *unless Congress provided otherwise or permitted the Secretary . . . to do otherwise and the Secretary did so.*" *Karnas*, 1 Vet.App. at 313 (emphasis added). Section 553 of title 5, U.S. Code, provides, in pertinent part, that the effective date of a regulation may not be earlier that 30 days after its publication date. 5 U.S.C. § 553(d).

Although the appellant argues that VA could not assign an effective date earlier than 30 days after its publication in the Federal Register pursuant to 5 U.S.C. § 553, the appellant fails to address 5 U.S.C. § 553(d)(3), which states that there is an exception to section 553(d), when "otherwise provided by the agency for good cause found and published with the rule." VA properly published within the final rule in the Federal Register its "good cause" for assigning an effective date for 38 C.F.R. § 3.300 consistent with 38 U.S.C. § 1103:

> Another commenter requested that the effective date of the proposed regulations be the date of publication of the final rule rather than June 9, 1998, as set forth in the proposed rule. We have retained the effective date of June 9, 1998, because this is the effective date imposed by statute (section 8202(c) of Pub. L. No. 105-178, as amended by section 9014(b) of Pub. L. No. 105-206). Again, we have no authority to change statutory provisions by regulation.

5 U.S.C. § 553(d)(3); 66 Fed. Reg. at 18,195; *see* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 8202(b), 112 Stat. 685, 866 (1998) (found at 38 U.S.C. § 1103 note) ("Section 1103 of title 38, United States Code [], shall apply with respect to claims received by the Secretary of Veterans Affairs after the date of the enactment of this Act . . . ."); *see also Bowen* and *Karnas*, both *supra*.

As discussed above, Congress clearly intended 38 U.S.C. § 1103 to have an effective date of June 9, 1998, and based on that Congressional intent, VA assigned the same effective date to 38 C.F.R. § 3.300. *Id.* Thus, the regulation is valid and the Board correctly applied the effective date provided in 38 C.F.R. § 3.300 when it determined that the appellant's DIC claim was precluded.

D.

The parties do not raise the applicability of the Veteran Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000), to this case, limiting their arguments to statutory and regulatory interpretation. Thus, it is the law, and not the underlying facts or development of the facts, that is dispositive in this matter. Accordingly, the VCAA can have no effect on this appeal. *See Smith v. Gober*, 14 Vet.App. 227 (2000) (VCAA has no effect on appeal limited to interpretation of law); *Dela Cruz v. Principi*, 15 Vet.App. 143 (2001) (VCAA not applicable where law, not factual evidence, is dispositive).

### III. CONCLUSION

Upon consideration of the foregoing, the September 26, 2001, decision of the Board of Veterans' Appeals is AFFIRMED.

STEINBERG*, Judge*, concurring: I concur in the opinion of the Court except for part II.D. The Court is not called upon to address the VCAA here because "neither party . . . has argued that application of the VCAA could be beneficial to the appellant." *Williams (Shirley) v. Principi*, 15 Vet.App. 189, 199 (2001) (en banc) (Kramer, C.J., with whom Steinberg, J., joined, stating separately).