Brenda J. JOHNSON, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 95–173.

United States Court of Veterans Appeals.

March 1, 1996.

Brenda J. Johnson, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Michele Russell Katina, Washington, DC, were on the pleadings for the appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

KRAMER, Judge:

The appellant, veteran Brenda J. Johnson, appeals an October 31, 1994, decision of the Board of Veterans' Appeals (Board or BVA) which denied entitlement to an evaluation greater than 10% for residuals of a stress fracture of the right pelvis (issue 1), denied a compensable rating for subluxation of the left knee (issue 2), and denied as not well grounded claims for service connection for lumbosacral strain, varicose veins, pes planus/hallux valgus, left pelvis disability, infertility, and obesity (issue 3). Record (R.) at 3–12. The Court has jurisdiction under 38 U.S.C. § 7252(a).

## I. Factual Background

The appellant served on active duty for training from July 1981 to December 1981. R. at 73–74. During training, she suffered a left knee injury as well as a stress fracture of the right pelvic bone. R. at 30, 32, 56–57.

In January 1991, the appellant filed an application for compensation. R. at 17. In October 1991, she underwent a series of VA examinations. R. at 62–71. In the orthopedic part of the examination, she indicated that she had injured her back in basic training and that she continued to have low back pain which occasionally radiated down into her lower extremities and into her feet. She also described occasional episodes of "tingling and numbness into both feet after prolonged walking or standing." R. at 64. Ex-amination of the lumbosacral spine revealed the following:

> [A] mild amount of paraspinous muscle tenderness to palpation[,] but no obvious spasm. There is no midline tenderness. The pelvis is level and she [toe] and heel walks without difficulty. SLR [straight leg raising] is negative bilaterally. DTR's [deep tendon reflexes] are 2+ at the knees and 1+ at the ankles[,] with toes downgoing bilaterally. Motor function is 5/5 bilaterally and sensory exam is completely intact.

*Ibid.* In addition, x-rays of the spine and knees did not show any "significant pathology." R. at 67. The final orthopedic examination impression was, inter alia, "chronic lumbosacral strain with no radiculopathy." R. at 65.

During the general part of the VA examination, the appellant stated that when her left patella moved, it tended to lock. She also indicated that she had pain after excessive motion or on standing, but the knee rarely, if ever, swelled. Supplemental Record (Suppl.R.) at 1. Examination of the knees revealed:

> [The appellant] has symmetrical knees. [T]here is some excess lateral motion of the patella. There is no tenderness over the patella or around the knee and no swelling. Full ROM [range of motion] from 0° to 140°. The knee was stable to varus and valgus stress. Drawer sign was normal.

*Ibid.* The appellant also told the examiner that for the last five or six years prior to the examination she had low back pain, frequently after prolonged sitting or standing. She described the pain as feeling like "a pulling sensation below the belt line and well above the hips." Suppl.R. at 1. She also stated that she had "the same feeling on occasion down the left or right thigh to about the knee." *Ibid.* In addition, the appellant indicated that she had had some pelvic pain. The examiner noted that "[s]he feels that the pain is well below and inside her description of the low back pain." Suppl.R. at 1. On examination of the back, it was noted:

> [The appellant] moves carefully. Otherwise, gait is normal and no pelvic tilt. She

holds herself stiffly, lifts herself onto table and scales with much care.... No tenderness over the spine or paravertebral muscles or on palpation over the buttocks. She could forward flex to 60°. Lateral flexion 20° right and left. Extension 20° and rotation to 30°. She did not have pain on SLR and had free motion of the hips except that she states that she had some discomfort on stretching the abductors to the thigh on the right side.

*Ibid.* The final diagnosis was, inter alia, "subluxation of the left knee, mild, recurrent" and "LS [lumbosacral strain], chronic, mild." R. at 71.

In December 1991, a VA regional office (RO) rating decision granted service connection for residuals of a stress fracture of the right pelvis and for subluxation of the left knee, assigning a noncompensable rating to both, and denied service connection for lumbosacral strain, varicose veins, pes planus/hallux valgus, left pelvis disability, infertility, and obesity. R. at 73–74. Medical records from January 1992 to November 1993 reveal that the appellant continued to complain of lower back pain and pain in both knees. R. at 116–17, 121, 125, 127, 129, 136, 141, 144. However, x-ray reports for the pelvis, hips, knees, and spine were normal. R. at 112–15, 145.

In October 1992, the appellant appealed to the BVA. R. at 92–93. On October 31, 1994, the BVA, in its decision leading to this appeal, determined that the residuals of a pelvis fracture are to be rated under 38 C.F.R. § 4.71a, Diagnostic Codes (DC) 5294 (sacroiliac injury and weakness) as analogous to DC 5295 (lumbosacral strain) (1995), and awarded a 10% rating. The BVA also denied a compensable rating for the knee disability under DC 5257 (recurrent subluxation or lateral instability) in § 4.71a, and determined that the remaining claims for service connection were not well grounded. R. at 3–12.

The appellant filed a timely appeal to the Court in which she requested, in her informal brief, service connection for all of her disabilities. Appellant's Brief (Br.) at 1. The Secretary filed a motion in lieu of a brief, requesting remand for that portion of the BVA decision which granted no more than a 10%

disability rating for residuals of a stress fracture of the right pelvis and denied entitlement to a compensable rating for subluxation of the left knee. The Secretary pointed out the Board's failure to apply 38 C.F.R. § 4.40 (1995) regarding musculoskeletal functional loss due to pain and 38 C.F.R. § 4.45(f) (1995) regarding pain on movement of a joint. The Secretary's motion also requested summary affirmance for that portion of the BVA decision which denied, as not well grounded, entitlement to service connection for the remaining claims.

## II. Analysis

### A. Generally Applicable Law

■ Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *see Robinette v. Brown*, 8 Vet.App. 69, 73 (1995). A claim is well grounded if it is "plausible." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Further, where the determinative issue involves medical etiology or a medical diagnosis, "competent medical evidence" that a claim is "plausible" or "possible" is required in order for the claim to be well grounded. *Lathan v. Brown*, 7 Vet.App. 359, 365–66 (1995); *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). This burden may not be met merely by presenting lay testimony, because lay persons are not competent to offer medical opinions. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494–95 (1992). The determination whether a claim is well grounded is subject to de novo review by this Court. *See Robinette*, 8 Vet. App. at 74.

■ The degree of disability under the rating code is a finding of fact subject to the "clearly erroneous" standard of review. *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... [the

Court] cannot overturn them." *Gilbert,* 1 Vet.App. at 53. On the other hand, when the only permissible view of the evidence is contrary to that found by the BVA, reversal is the appropriate remedy. *See Karnas v. Derwinski,* 1 Vet.App. 308, 311 (1991); *see also Hicks v. Brown,* 8 Vet.App. 417, 422 (1995) ("Reversal is the appropriate remedy when '[t]here is absolutely no plausible basis' for the BVA's decision and where that decision 'is clearly erroneous in light of the *uncontroverted* evidence in appellant's favor.'" (emphasis added) ( citing *Hersey v. Derwinski,* 2 Vet.App. 91, 95 (1992)).

Section 4.40 of title 38, Code of Federal Regulations, provides as to the musculoskeletal system that it is "essential that the examination on which ratings are based" adequately portray any "functional loss" which "may be due to pain." Such functional loss must be "supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion.... [A] part which becomes painful on use must be regarded as seriously disabled." 38 C.F.R. § 4.40. Section 4.45 states that to determine the factors causing disability of the joints, inquiry must be directed toward, inter alia, "[p]ain on movement." 38 C.F.R. § 4.45(f); *see Schafrath v. Derwinski,* 1 Vet.App. 589, 592 (1991) ("under the regulations, the functional loss due to pain is to be rated at the same level as the functional loss where [motion] is impeded"); *see also DeLuca v. Brown,* 8 Vet.App. 202, 205 (1995); *Quarles v. Derwinski,* 3 Vet.App. 129, 139 (1992). In addition, 38 C.F.R. § 4.67 (1995), provides the following factors to be considered in rating residuals of pelvic bone fractures: "The variability of residuals following [pelvic bone] fractures necessitates rating on specific residuals, faulty posture, limitation of motion, muscle injury, painful motion of the lumbar spine, manifest by muscle spasm, mild to moderate sciatic neuritis, peripheral nerve injury, or limitation of hip motion."

### B. Application of Law to Facts

#### 1. Issue One

██ With regard to the appellant's claim for an increased rating for residuals of a stress fracture of the right pelvis, the BVA, as noted above, evaluated the claim under DC 5294, sacroiliac injury and weakness, as analogous to DC 5295, lumbosacral strain. Under DC 5295, a 20% disability rating will be awarded if the lumbosacral strain is characterized by "muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in standing position." The BVA, however, did not address the 20% rating criteria in relation to the appellant's symptoms. As to the initial criterion, the BVA did not address whether the appellant had muscle spasm on extreme forward bending. The Court notes that this criterion is based on muscle spasm, not a loss of motion, whereas the latter criterion of the 20% rating is predicated on a loss of motion. With respect to the possible applicability of this latter criterion, the Court notes that the 1991 VA examiner indicated that the appellant had 20° lateral flexion right and left. Suppl.R. at 1.

In addition, although the examiner made a notation regarding the appellant's "discomfort on stretching the abductors to the thigh on the right side" (*Ibid.*), the BVA did not address the applicability of 38 C.F.R. §§ 4.40 and 4.45.

In light of this evidence and the provisions of DCs 5294, 5295, and §§ 4.40, 4.45, and 4.67 ("pelvic bone"), the BVA must take the following action. First, the BVA must address whether in light of § 4.67, DCs 5294–95 are the appropriate DCs to be used in this matter. Second, it must determine if there is muscle spasm on extreme forward bending. Third, the BVA should make factual findings as to whether the appellant's lateral flexion to 20° constitutes "loss of lateral spine motion" and if not, whether the discomfort noted by the VA examiner in the appellant's right thigh upon stretching equates to functional loss due to pain on lateral spine motion. *See DeLuca,* 8 Vet.App. at 206 (loss of range of motion should be portrayed "in terms of the additional range-of-motion loss due to pain on use or during flareups"). In determining the latter, the Board should also address whether a finding of such pain is "supported by adequate pathology and evidenced by the visible behavior of the [appellant] undertaking the motion." 38 C.F.R. § 4.40. Fourth, the BVA must address

whether the criteria for a 20% rating are alternative or cumulative and apply 38 C.F.R. §§ 4.21 ("it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified") and 4.7 (higher of two evaluations) (1995), accordingly. In addressing the above issues, the Board must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc), *vacating in part on other grounds,* 2 Vet.App. 103 (1992); *Gilbert,* 1 Vet.App. at 56–57.

### 2. Issue Two

 With regard to the appellant's claim for a compensable rating for subluxation of the left knee, the BVA evaluated the claim under DC 5257. This DC is not predicated on loss of range of motion, and thus §§ 4.40 and 4.45, with respect to pain, do not apply. Instead, DC 5257 provides that recurrent subluxation or lateral instability is ratable at 10% when "slight," thus providing a minimum 10% rating for this condition, *cf.* DC 5277, and at 20% when the condition is "moderate."

The Court's review of the record on appeal reveals neither evidence that would indicate the absence of recurrent subluxation nor any evidence that would indicate the appellant is moderately disabled from it. The only pertinent evidence is the 1991 VA examination which clearly diagnosed the appellant with "subluxation of the left knee, mild, recurrent." R. at 71. Rather than addressing the 10% criterion in the context of this 1991 diagnosis, however, the BVA spoke only in terms of missing residuals. R. at 9. In sum, the Court finds that no evidence contradicts the 1991 diagnosis which mandates a 10% rating. When, as in this case, the only permissible view of the evidence is contrary to the BVA's finding, reversal is the appropriate remedy. *See Karnas,* 1 Vet.App. at 311; *see also Hicks, supra,* at 422.

### 3. Issue Three

With regard to the appellant's claims for service connection for lumbosacral strain, varicose veins, pes planus/hallux valgus, left pelvis disability, infertility, and obesity, since there is no "competent medical evidence" linking these disabilities to service, such claims are not well grounded. *See Robinette* and *Grottveit,* both *supra.*

### III. Conclusion

For the reasons stated above, that part of the Board's decision denying the appellant an evaluation greater than 10% for residuals of a stress fracture of the right pelvis is VACATED and the matter REMANDED to the Board for proceedings consistent with this opinion; that part of the BVA's decision denying the appellant a compensable rating for subluxation of the left knee is REVERSED and the matter REMANDED to the BVA with direction to award a 10% rating; and that part of the BVA's decision determining that claims for service connection for lumbosacral strain, varicose veins, pes planus/hallux valgus, left pelvis disability, infertility, and obesity were not well grounded is AFFIRMED. On remand, the appellant will be free to submit additional evidence and argument with respect to the vacated and remanded claim. *See Quarles,* 3 Vet.App. at 141.