Citation Nr: 1121871 
Decision Date: 06/06/11 Archive Date: 06/20/11

DOCKET NO. 05-27 539 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for limitation of flexion of the right knee.

2. Entitlement to an initial rating in excess of 30 percent for limitation of flexion of the left knee.

3. Entitlement to an initial rating in excess of 10 percent for limitation of extension of the right knee.

4. Entitlement to an initial rating in excess of 10 percent for degenerative arthritis of the right knee.

5. Entitlement to an initial rating in excess of 10 percent for degenerative arthritis of the left knee.



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Fleming, Associate Counsel


INTRODUCTION

The Veteran had active military service from February 1971 to December 1978 and from July 1984 to January 1985.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2004 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. In that decision, the RO granted service connection for degenerative arthritis of the right and left knees, assigning an initial 10 percent disability rating for each knee. 

The Board subsequently remanded the case in August 2007 and again in November 2009 for further notification, evidentiary development, and adjudication. Following the Board's August 2007 remand, the agency of original jurisdiction (AOJ) issued a rating decision in August 2009 in which it granted the Veteran separate ratings for limitation of flexion in the right and left knees and assigned a 20 percent rating for each knee. Also in the August 2009 rating decision, the AOJ granted the Veteran a separate evaluation for limitation of extension of the right knee, with a rating of 10 percent. In a February 2011 rating decision, the AOJ awarded the Veteran higher ratings of 30 percent for limitation of flexion in each knee.

As the appeal of the Veteran's claims for initial ratings in excess of 30 percent for limitation of flexion of the right and left knee as well as initial ratings in excess of 10 percent for limitation of extension of the right knee and for degenerative arthritis of each knee emanates from the Veteran's disagreement with the initial ratings assigned following the grant of service connection, the Board has characterized the claims as for higher initial ratings, in accordance with Fenderson v. West, 12 Vet. App. 119, 126 (1999). (A claim for a total rating based on individual unemployability was previously before the Board, but this benefit was granted by the AOJ in its February 2011 decision.)

The Veteran testified before the undersigned Veterans Law Judge at a hearing at the RO in March 2007. A transcript of the hearing has been associated with the Veteran's claims file. 


FINDINGS OF FACT

1. The Veteran's right knee disability has been manifested by subjective complaints of pain, stiffness, and swelling, and objective findings of degenerative arthritis, extension to no worse than 10 degrees, and flexion to no worse than 30 degrees when pain on motion is taken into consideration.

2. The Veteran's left knee disability has been manifested by subjective complaints of pain, stiffness, and swelling, and objective findings of degenerative arthritis, extension to no worse than 10 degrees, and flexion to no worse than 30 degrees when pain on motion is taken into consideration.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 30 percent for limitation of flexion of the right knee have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5003, 5010, 5260 (2010).

2. The criteria for an initial rating in excess of 30 percent for limitation of flexion of the left knee have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5003, 5010, 5260 (2010).

3. The criteria for an initial rating in excess of 10 percent for limitation of extension of the right knee have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5003, 5010, 5261 (2010).

4. The criteria for a rating in excess of 10 percent for degenerative arthritis of the right knee have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5003, 5010 (2010).

5. The criteria for a rating in excess of 10 percent for degenerative arthritis of the left knee have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5003, 5010 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Board notes the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000), in November 2000. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2010). To implement the provisions of the law, VA promulgated regulations codified at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010). The VCAA and its implementing regulations include, upon the submission of a substantially complete application for benefits, an enhanced duty on the part of VA to notify a claimant of the information and evidence needed to substantiate a claim, as well as the duty to notify the claimant of what evidence will be obtained by whom. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). In addition, they define the obligation of VA with respect to its duty to assist a claimant in obtaining evidence. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). (The Board notes that 38 C.F.R. § 3.159 was revised, effective May 30, 2008. See 73 Fed. Reg. 23353-56 (Apr. 30, 2008). The amendments apply to applications for benefits pending before VA on, or filed after, May 30, 2008. The amendments, among other things, removed the notice provision requiring VA to request the claimant to provide any evidence in the claimant's possession that pertains to the claim. See 38 C.F.R. § 3.159(b)(1).)

The Board finds that all notification and development action needed to arrive at a decision as to the claims on appeal has been accomplished. Through July 2004, August 2007, July 2008, and December 2009 notice letters, the RO notified the Veteran of the information and evidence needed to substantiate his claims. Additionally, it should be noted that once the Veteran disagrees with an initial determination, other provisions apply to the remainder of the adjudication process, particularly those pertaining to the issuance of rating decisions and statements of the case, which were done in this case. See 38 U.S.C.A. §§ 5104(a), 7105(d) (West 2002); 38 C.F.R. §§ 3.103(b)(1), 19.29 (2010); Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490-91 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); see also Dunlap v. Nicholson, 21 Vet. App. 112, 119 (2007). Consequently, a remand for further VCAA notification is not necessary.

The Board also finds that the July 2004, August 2007, July 2008, and December 2009 notice letters satisfy the statutory and regulatory requirement that VA notify a claimant which evidence, if any, will be obtained by the claimant and which evidence, if any, will be retrieved by VA. See Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002) (addressing the duties imposed by 38 U.S.C. § 5103(a) and 38 C. F.R. § 3.159(b)). In the letters, the RO notified the Veteran that VA was responsible for obtaining relevant records from any Federal agency and that the RO would make reasonable efforts to obtain relevant records not held by a Federal agency, such as from a state, private treatment provider, or an employer. Additionally, the notice letters requested the Veteran to submit medical evidence, opinions, statements, and treatment records regarding his disability. Consequently, a remand of these issues for further notification of how to substantiate the claims is not necessary.

There is no indication that any additional action is needed to comply with the duty to assist in connection with the issues on appeal. Records from the Veteran's private treatment providers have been associated with his claims file. Significantly, the Veteran has not otherwise alleged that there are any outstanding medical records probative of his claims on appeal that need to be obtained. Thus, the Board finds that VA has properly assisted the Veteran in obtaining any relevant evidence. Additionally, the Veteran was afforded VA examinations in December 2004 and July 2009, the reports of which are of record. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As noted below, the Board finds that the July 2009 VA examination obtained in this case is sufficient, as it is predicated on consideration of the private and VA medical records in the Veteran's claims file, as well as specific examination findings. It considers the statements of the Veteran, and provides a rationale for the findings made, relying on and citing to the records reviewed. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination with respect to the issues on appeal has been met. 38 C.F.R. § 3.159(c)(4).

II. Analysis

The Veteran's entire history is reviewed when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where, as here, the question for consideration is the propriety of the initial evaluation assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of a "staged rating" (assignment of different ratings for distinct periods of time, based on the facts found) is required. See Fenderson, 12 Vet. App. at 126. 

Disability evaluations are determined by comparing a Veteran's symptoms with criteria set forth in VA's Schedule for Rating Disabilities, which are based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2010). When a question arises as to which of two ratings applies under a particular diagnostic code, the higher of the two evaluations is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2010). After consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3 (2010).

When evaluating musculoskeletal disabilities, VA must, in addition to applying schedular criteria, consider granting a higher rating in cases in which the veteran experiences functional loss due to limited or excess movement, pain, weakness, excess fatigability, or incoordination (to include during flare-ups or with repeated use), and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45 (2010); DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In VA Fast Letter 06-25 (November 29, 2006), VA's Compensation & Pension Service noted that to properly evaluate any functional loss due to pain, examiners, at the very least, should undertake repetitive testing (to include at least three repetitions) of the joint's range of motion, if feasible. It was determined that such testing should yield sufficient information on any functional loss due to an orthopedic disability. Additionally, under VAOPGCPREC 9-2004 (September 17, 2004), separate ratings under Diagnostic Code 5260 and Diagnostic Code 5261 may be assigned for limitation of flexion and limitation of extension of a single knee joint.

Under Diagnostic Code 5010, arthritis due to trauma is to be rated as arthritis under Diagnostic Code 5003. 38 C.F.R. § 4.71a (2010). Under Diagnostic Code 5003, degenerative arthritis established by X-ray findings will be evaluated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When, however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010 (2010). Furthermore, under Diagnostic Code 5003, in the absence of limitation of motion, arthritis is rated as 10 percent disabling with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, and 20 percent disabling with X-ray evidence of involvement of 2 or more major joints or 2 or more major joint groups, with occasional incapacitating exacerbations. 

Under Diagnostic Code 5260, governing limitation of flexion of the knee, a 10 percent disability rating is warranted if flexion is limited to 45 degrees, a 20 percent disability rating if flexion is limited to 30 degrees, and a 30 percent disability rating if flexion is limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260. Limitation of extension of the knee under Diagnostic Code 5261 is rated 10 percent disabling if extension is limited to 10 degrees, 20 percent disabling if extension is limited to 15 degrees, 30 percent disabling if extension is limited to 20 degrees, 40 percent disabling if extension is limited to 30 degrees, and 50 percent disabling if extension is limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261. 

Where there is other impairment of the knee, namely recurrent subluxation or lateral instability, a 10 percent rating may be assigned where the resulting disability is slight. A 20 percent evaluation will be assigned for moderate disability, and 30 percent for severe disability. 38 C.F.R. § 4.71a, Diagnostic Code 5257. VA's Office of General Counsel has determined a claimant may receive separate disability ratings for limitation of motion and instability of the knee. See VAOPGCPREC 23-97 (July 1, 1997; revised July 24, 1997).

The relevant medical evidence consists of VA examinations conducted in December 2004 and July 2009, as well as records of the Veteran's private medical treatment. In the December 2004 examination report, the Veteran complained of pain and crepitation on motion, as well as weakness and difficulty standing, sitting, and walking up or down stairs. Physical examination found flexion limited to 75 degrees on the left and 92 degrees on the right, with pain complained of throughout the range of motion. Extension was found to be to 10 degrees bilaterally, with pain on motion. No instability was noted on examination, although the examiner noted some effusion of the Veteran's knees and observed that the Veteran had a "stiff-legged gait" and used a cane in his right hand. Radiological examination revealed degenerative arthritis of both knees. No ankylosis, subluxation, or locking was noted. The examiner diagnosed the Veteran with bilateral degenerative arthritis with pain and decreased range of motion in the knees.

Report of the July 2009 VA examination reflects the Veteran's complaint of worsening pain in his knees, as well as stiffness, swelling, weakness, and giving way when standing up from a seated position. The examiner noted that the Veteran wore bilateral ankle braces and walked with a cane in one hand. No inflammatory arthritis was found, although the examiner noted that the Veteran was unable to stand for more than two to three minutes or walk more than 10 to 20 feet before needing to rest. Physical examination revealed patellar and meniscal abnormalities bilaterally, as well as crepitation on movement. No lateral instability was found. The range of motion was found to be from 10 to 30 degrees bilaterally, with no additional loss or limitation of motion on repetition. The examiner diagnosed the Veteran with degenerative joint disease in the bilateral knees as well as meniscal injuries and chondromalacia bilaterally. The examiner noted that the Veteran was unemployed due to his inability to complete the physical demands of his job secondary to his knee problems. 

In addition to the medical evidence, the Veteran has submitted multiple statements in support of his claims and has testified before the undersigned Veterans Law Judge. Each of these statements reflects similar complaints as were reported in the VA examinations. In particular, the Veteran contended at his March 2007 hearing before the undersigned Veterans Law Judge that he is unable to completely bend or straighten the knees and has continuous pain in both knees. He has further contended that he is unable to work due to his knee problems. His private treatment records from the appeal period document ongoing complaints of pain in the knees as well as a specific finding of "fairly stable" arthritis in the knees made in 2005. 

In its December 2004 rating decision, the AOJ evaluated the Veteran's service-connected degenerative arthritis of the knees under Diagnostic Codes 5010 and 5003, governing arthritis. In the August 2009 rating decision, the AOJ granted the Veteran separate ratings for loss of flexion, assigning an initial 20 percent rating for each knee under Diagnostic Code 5260. 38 C.F.R. § 4.71a (2010). Also in the August 2009 rating decision, the AOJ granted the Veteran a separate evaluation for loss of extension of the right knee under Diagnostic Code 5261, relating to limitation of extension of the knee joint. Id. In a February 2011 rating decision, the AOJ awarded the Veteran higher ratings of 30 percent for loss of flexion in each knee. The Board will thus consider the Veteran's service-connected right and left knee under Diagnostic Codes 5010 and 5003 as well as Diagnostic Codes 5260 and 5261. 

Here, the medical evidence reflects that the Veteran has complained of pain, giving way, stiffness, and swelling in the knees, which problems are exacerbated by prolonged standing and walking up stairs. The VA examination reports reflect the Veteran's reported history of pain, swelling, fatigability, and stiffness, and the December 2004 and July 2009 examiners noted that the Veteran had pain on range of motion of both knees. The Board notes, however, that although the Veteran was found to have pain, the July 2009 VA examiner noted that the Veteran's range of motion was not limited further by repetition of motion. In that connection, the Board notes specifically that at the July 2009 VA examination, the Veteran's range of motion was from 10 to 30 degrees bilaterally, with pain on motion.

Although the AOJ has used Diagnostic Codes 5010 and 5003 in awarding the Veteran a 10 percent rating based on his degenerative arthritis in the right knee, the Board notes that, as discussed above, Diagnostic Codes 5010 and 5003 are for application only in the absence of limitation of motion compensable under Diagnostic Codes 5260 or 5261, governing limitation of flexion or extension of the knee. Because the Veteran is being separately compensated for limitation of motion under Diagnostic Code 5260 and under Diagnostic Code 5261 based on arthritis, the Board finds that a separate rating under Diagnostic Code 5003 or 5010 is not appropriate. The critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). As the Veteran's symptoms of pain and limitation of motion of the right knee are evaluated as part of his service-connected limitation of flexion and extension of the right knee, discussed below, to also evaluate the same symptoms under Diagnostic Codes 5003 and 5010 would be pyramiding, which is prohibited by 38 C.F.R. § 4.14 (2010). See id. Consequently, no rating higher than already assigned by the AOJ for arthritis under Diagnostic Code 5003 or 5010 may be awarded.

Turning to an analysis of the Veteran's service-connected limitation of flexion of the right knee, the Board first notes that the Veteran was granted a separate rating for limitation of flexion of the right knee via an August 2009 rating decision, in which the AOJ found that the Veteran displayed compensable disability due to limitation of flexion of the right knee. The AOJ assigned an initial 20 percent disability rating in the August 2009 rating decision, which was increased to a 30 percent rating in a February 2011 rating decision. Upon review of the relevant medical evidence, the Board does not find that the clinical evidence supports a rating in excess of 30 percent for limitation of flexion of the right knee. In this case, the Veteran's limitation of flexion of the right knee has been manifested by disability equating to no worse than a limitation of flexion to 30 degrees, even when pain on motion is taken into consideration pursuant to DeLuca, supra. As the Veteran's flexion is limited to 30 degrees, it approximates a 20 percent rating under Diagnostic Code 5260. Thus, the Board finds that the preponderance of the evidence is against a rating in excess of 30 percent for limited flexion of the Veteran's right knee under Diagnostic Code 5260.

Turning to an analysis of the Veteran's service-connected limitation of extension of the right knee, the Board first notes that the Veteran was granted service connection for limitation of extension of the right knee via an August 2009 rating decision, in which the AOJ found that the Veteran displayed compensable disability due to limitation of extension of the right knee. The AOJ assigned an initial 10 percent disability rating in the August 2009 rating decision. Upon review of the relevant medical evidence, the Board finds that, as the Veteran's extension of the right knee is at worst limited to 10 degrees, even when pain on motion is taken into consideration, it approximates a 10 percent rating under Diagnostic Code 5261. 

Turning to an evaluation of the Veteran's service-connected left knee, upon consideration of the relevant medical evidence, the Board does not find that the clinical evidence supports a rating higher than 10 percent under Diagnostic Code 5003. Although the RO has used Diagnostic Codes 5010 and 5003 in awarding the Veteran a 10 percent rating based on his degenerative arthritis in the left knee, the Board notes that, as discussed above, Diagnostic Codes 5010 and 5003 are for application only in the absence of limitation of motion compensable under Diagnostic Codes 5260 or 5261, governing limitation of flexion or extension of the knee. Because here the Veteran is being separately compensated for limitation of flexion of the left knee under Diagnostic Code 5260, the Board finds that a separate rating under Diagnostic Codes 5003 and 5010 is not appropriate. As noted above, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban, 6 Vet. App. at 261-62. As the Veteran's symptoms of pain and limitation of motion of the left knee are evaluated as part of his service-connected limitation of flexion of the knee, discussed below, to also evaluate the same symptoms under Diagnostic Codes 5003 and 5010 would be pyramiding, which is prohibited by 38 C.F.R. § 4.14. See id.

The Board acknowledges that the Veteran has displayed compensable limitation of extension of the left knee. As his extension in the left knee is limited to 10 degrees, when considering pain on motion, the Board finds that a 10 percent disability rating would be warranted under Diagnostic Code 5261. Here, however, the Board notes that, as discussed above, the AOJ has already assigned the Veteran a 10 percent disability rating for arthritis of the left knee. As this 10 percent disability rating would be appropriate for limitation of extension, and because it is assigned separate from the rating for limitation of flexion, the Board will not disturb the rating. It bears emphasizing, however, that the 10 percent disability rating assigned by the AOJ to compensate the Veteran for limitation of motion - in this case, limitation of extension - would be more rightly rated under Diagnostic Code 5261. Thus, because a 10 percent rating under Diagnostic Codes 5003 and 5010 is inappropriate where, as here, limitation of motion is compensable, the Board finds that the 10 percent disability rating assigned for what has been characterized as degenerative arthritis is more appropriately categorized as a disability rating under 5261 for limitation of extension of the left knee. In so finding, the Board again points out that the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban, 6 Vet. App. at 261-62. As the Veteran's symptoms of pain and limitation of extension of the left knee are contemplated by the 10 percent rating already in effect, to also evaluate the same symptoms separately would be pyramiding, which is prohibited by 38 C.F.R. § 4.14. See id.

Turning to an analysis of the Veteran's service-connected limitation of flexion of the left knee, the Board first notes that the Veteran was awarded a rating for limitation of flexion of the left knee via an August 2009 rating decision, in which the AOJ found that the Veteran displayed compensable disability due to limitation of flexion. The AOJ assigned an initial 20 percent disability rating in the August 2009 rating decision, which was increased to a 30 percent rating in a February 2011 rating decision. Upon review of the relevant medical evidence, the Board does not find that the clinical evidence supports a rating in excess of 30 percent for limitation of flexion of the left knee. In this case, the Veteran's limitation of flexion of the left knee has been manifested by disability equating to no worse than a limitation of flexion to 30 degrees, even when pain on motion is taken into consideration pursuant to DeLuca, supra. As the Veteran's flexion is limited to 30 degrees, it approximates a 20 percent rating under Diagnostic Code 5260. Thus, the Board finds that the preponderance of the evidence is against a rating in excess of 30 percent for limitation of flexion of the left knee under Diagnostic Code 5260.

Additionally, there has been no showing that the Veteran experiences any instability or subluxation in either knee such that a separate compensable rating could be assigned under Diagnostic Code 5257. 38 C.F.R. § 4.71a. Similarly, there has been no showing of ankylosis, dislocation or removal of semilunar cartilage, impairment of the tibia or fibula, or genu recurvatum at any time. See 38 C.F.R. § 4.71a, Diagnostic Codes 5256, 5258, 5259, 5262, 5263.

The above determinations are based on consideration of the applicable provisions of VA's rating schedule. The Board finds that at no time have the disabilities under consideration been shown to be so exceptional or unusual as to warrant the assignment of any higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1) (2010); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) (holding that the "rating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical"). Here, the rating criteria contemplate the Veteran's disability levels and symptomatology; thus, his disability picture is addressed by the rating schedule, and the assigned schedular evaluations for the disabilities at issue are, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). Consequently, referral for extra-schedular consideration is not warranted.

For all the foregoing reasons, the Board finds that the Veteran's service-connected limitation of flexion of the knees warrants no more than the 30 percent disability ratings already assigned; his limitation of extension of the right knee warrants no more than the 10 percent assigned; and the separate ratings for what has been characterized as arthritis of the knees warrants no more than the 10 percent already assigned for each knee. 38 C.F.R. §§ 4.3, 4.7, 4.14, 4.40, 4.45, 4.71a, Diagnostic Codes 5003, 5010, 5260, 5261 (2010). This is so for the entirety of the appellate period. (As noted in the discussion above, the prohibition against pyramiding of ratings causes the Board to reach this result.) In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claims, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 


ORDER

Entitlement to an initial rating in excess of 30 percent for limitation of flexion of the right knee is denied.

Entitlement to an initial rating in excess of 30 percent for limitation of flexion of the left knee is denied.

Entitlement to an initial rating in excess of 10 percent for limitation of extension of the right knee is denied.

Entitlement to an initial rating in excess of 10 percent for degenerative arthritis of the right knee is denied.

Entitlement to an initial rating in excess of 10 percent for degenerative arthritis of the left knee is denied.



_________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs